IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENNIS IHLENFELD,

        *Plaintiff*,

v.

DARBY BOROUGH POLICE
DEPARTMENT *et al.*,

        *Defendants*.

CIVIL ACTION
No. 16-01990

**PAPPERT, J.**                                                                           **January 13, 2017**

<u>**MEMORANDUM**</u>

Dennis Ihlenfeld was arrested in 2014 for his role in an alleged fight in which he was accused of trying to run over another man with his truck. Ultimately, prosecutors decided not to pursue a case against him. Ihlenfeld sued the Borough of Darby, Officer Mathew Barr, Police Chief Robert Smythe and four John Doe Defendants alleging constitutional violations under 42 U.S.C. § 1983 and state law claims for false arrest and imprisonment, malicious prosecution, assault and battery. The Defendants moved to dismiss all claims. For the reasons set forth below, the Court grants Defendants' Motion.

**I.**

On May 14, 2014 Darby Borough Police Officer Mathew Barr responded to a call to investigate an ongoing fight at a residence. (Am. Compl. ¶ 20, ECF No. 12.) On his way to the incident, Officer Barr received an update that a suspect was attempting to run over another person with a truck. (*Id.* ¶ 21.) By the time he arrived, however, the fight was over.

At the scene, Officer Barr met the alleged victim, Isheem Smith. Smith told Officer Barr that Plaintiff Dennis Ihlenfeld had started a fight with him over a set of tools. (*Id.* ¶ 22.)

1

Ihlenfeld had loaned tools to Jamie Wright, who lived with Smith.[1]  When Ihlenfeld came to collect the tools, Smith did not allow him to enter the property.  (*Id.* ¶ 26.)  According to Smith, Ihlenfeld proceeded to verbally berate him while brandishing a metal pole.  (*Id.*)  Smith ran from Ihlenfeld and Ihlenfeld chased him in his truck, in an attempt to run him over.  (*Id.* ¶ 28.)  Smith claimed that he was ultimately forced to dive into shrubbery to avoid being hit.  (*Id.* ¶ 29.)  Smith provided a written statement to police.  (Defs.' Ex. D-1, Affidavit of Probable Cause, hereafter "Affidavit.")  Officer Barr also showed Smith a photo of Ihlenfeld which Smith positively identified as a picture of his attacker.  (*Id.*)

Officer Barr recorded all of the above information in his affidavit of probable cause.[2]  *See* (Affidavit).  Based on Barr's affidavit, a neutral magistrate issued a warrant for Ihlenfeld's arrest.  (Am. Compl. ¶ 32.)  Later that day, three or four Darby Borough police officers arrested Ihlenfeld for aggravated assault, simple assault and terroristic threats.  (*Id.* ¶¶ 1, 4, 34.)  Ihlenfeld was incarcerated for approximately four or five days.  (*Id.* ¶ 33.)  During his incarceration, he allegedly suffered extreme pain and discomfort due to his medical condition, endocarditis, which was exacerbated by jail conditions and jail personnel's failure to provide him with his medication.  (*Id.* ¶¶ 33, 38.)

On June 11, 2014 a preliminary hearing was held in the Darby Borough Magisterial District Court, where, according to Ihlenfeld, Smith provided inconsistent and perjurious

---

[1]     Smith told Officer Barr that Wright was his friend and roommate while, in reality, Wright is Smith's father and was employed by Ihlenfeld.  (*Id.* ¶¶ 23–24.)

[2]     "In deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig.* (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (internal quotations and citations omitted).  Ihlenfeld's claims are based on his allegedly unlawful arrest made by Officer Barr pursuant to a warrant supported by an affidavit.  Defendants have attached Officer Barr's affidavit of probable cause to their motion to dismiss. Ihlenfeld acknowledges the affidavit's authenticity by citing to it repeatedly in his response to the Defendants' motion.  *See, e.g.*, (Pl.'s Resp., at 3–5, ECF No. 17).

testimony. (*Id.* ¶¶ 41–42.) Nevertheless, Ihlenfeld's charges were held over after the hearing. (*Id.* ¶ 88.) The Delaware County District Attorney's Office, however, ultimately decided not to pursue the case against Ihlenfeld and all charges were dismissed with prejudice on December 17, 2014. (*Id.* ¶ 40.)

Ihlenfeld sued the Darby Borough Police Department and Officer Barr on April 27, 2016. (ECF No. 1.) Defendants filed a motion to dismiss on August 16, 2016. (ECF No. 9.) Ihlenfeld filed an amended complaint against the Borough of Darby, Officer Barr, Police Chief Robert Smythe and four John Doe Defendants on September 6, 2016. (ECF No. 12.) Defendants' filed a motion to dismiss the amended complaint on September 20, 2016. (ECF No. 15.) Ihlenfeld filed a response on October 11, 2016, (ECF No. 17), and Defendants filed their reply on October 14, 2016, (ECF No. 18).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff

3

must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.*  In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.*  The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).  Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

III.

A.

Ihlenfeld asserts claims against all Defendants[3] under § 1983 for false arrest and imprisonment under the Fourth Amendment and for allegedly improper medical care he received while incarcerated under the Fourteenth Amendment.  To establish a *prima facie* case under § 1983, Ihlenfeld must show that a person acting under color of law deprived him of "rights, privileges, or immunities" secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *see Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

1.

Ihlenfeld claims police arrested him pursuant to a warrant that was not supported by probable cause.  Because Ihlenfeld was arrested pursuant to a warrant, he must plead facts demonstrating that (1) the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."  *Wilson*, 212 F.3d at 786–87; *see also Paszkowski v. Roxbury Tp. Police Dept.*, 581 F. App'x 149, 152 (3d Cir. 2014).  Statements are "made with reckless disregard" for the truth when an officer has "obvious reasons to doubt the accuracy of the information he reported" or when he has "serious doubts as to the truth of his statements."  *Id.* at 788.  "[O]missions are

---

[3] Ihlenfeld purports to sue Chief Smythe, Officer Barr and the John Doe Defendants in both their official and individual capacities.  "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law."  *Helm*, 2015 WL 437661, at *9 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  "Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent."  *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Therefore, if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself."  *Helm*, 2015 WL 437661, at *9 (citing *Graham*, 473 U.S. at 166).
   Because Ihlenfeld also sued the Borough of Darby, his official capacity claims against Chief Smythe, Officer Barr and the John Doe Defendants are redundant.  The Court analyzes the claims against these individuals in their individual, not official, capacities.

made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Id.* at 783 (quotation omitted).

Ihlenfeld does not allege that Office Barr made false statements or omissions in his application for an arrest warrant. He asserts instead that Office Barr "made no attempts to independently corroborate" Smith's story with Ihlenfeld or other witnesses prior to Ihlenfeld's arrest. (Am. Compl. ¶ 27.) Ihlenfeld asserts that this failure to corroborate amounts to causing a warrant to issue in reckless disregard of the truth. (*Id.* ¶ 32.) This argument is meritless.

Once an officer believes he has probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000); *see also Lincoln v. Hanshaw*, No. 08-4207, 2009 WL 1259099, at *5 (E.D. Pa. May 6, 2009) (quoting *Vassalo v. Timoney*, No. 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001) ("An officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent.")). Thus, the "mere fact that a police investigation could have been more thorough does not vitiate probable cause." *Mitchell v. Obenski*, 134 F. App'x 548, 551 (3d Cir. 2005). This is because "the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). It "does not require that officers correctly resolve conflicting evidence or that their determination of credibility, were, in retrospect, accurate." *Id.* (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005)). Probable cause "thus provides individuals protection 'against unreasonable searches and seizures' while simultaneously enabling investigating officers to act quickly—before necessarily

obtaining evidence sufficient to prove guilt beyond a reasonable doubt—to effect an arrest." *Id.* at 467 (quoting U.S. Const. amend. IV)).

In this Circuit, "statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of [a] witness's own unreliability that outweigh[s] the probable cause that otherwise exists." *Dempsey*, 834 F.3d at 477–78 (quoting *Wilson*, 212 F.3d at 790; *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (internal quotations omitted)); *see also Sharrar*, 128 F.3d at 818 ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest.").

In this case, Officer Barr had a firsthand complaint by Smith, the purported victim, who specifically named and positively identified Ihlenfeld (via a photograph) as the suspect. Ihlenfeld does not allege that Officer Barr possessed exculpatory evidence or substantial evidence that Smith was unreliable at the time he applied for the warrant. He points, instead, to two inconsistencies in Smith's story which Officer Barr failed to detect: Smith's relationship with Jamie Wright and the absence of shrubbery where Ihlenfeld allegedly almost hit Smith. Neither purported inconsistency undermines the validity of Officer Barr's warrant application.

Ihlenfeld explains that Smith told Officer Barr that Wright was his friend and roommate when, in reality, Wright is Smith's father. (Am. Compl. ¶¶ 23–25.) It appears Ihlenfeld uses this fact in an attempt to show that Smith was not a credible witness. This is certainly evidence that, if true, Ihlenfeld could have used at his own trial to impeach Smith. But unless Officer Barr knew or had reason to know that Smith was lying to him, this information is not relevant to evaluate whether Barr made materially false statements or omissions in his warrant application.

Ihlenfeld also attempts to show that Smith was not a credible witness by focusing on a particular detail of Smith's story: Smith's claim that he was forced to dive into shrubbery to avoid being hit by Ihlenfeld's truck. Ihlenfeld asserts that, had Officer Barr attempted to corroborate Smith's story, he "would have easily discovered" that there was no shrubbery near the location Smith described. (Am. Compl. ¶ 31.) As explained above, however, Officer Barr was not under an obligation to corroborate Smith's story before finding probable cause to seek a warrant for Ihlenfeld's arrest.

Even if Officer Barr had noticed that there was not shrubbery at the relevant location, it is not clear that this omission would be material since "some unreliability or exculpatory evidence will not fatally undermine probable cause otherwise established." *Id.* at 478. In *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), the Third Circuit Court of Appeals was faced with more significant omissions in a warrant application: exculpatory evidence suggested the suspect was significantly taller than the arrestee, a different victim was unable to identify the arrestee, and a victim changed her story before identifying the arrestee as the suspect. *See Wilson*, 212 F.3d at 790–91. The Court held that these omissions were not material and therefore the victim identification contained in the warrant application supported probable cause. *Id.* at 792.

Ihlenfeld also contends that the Borough of Darby has a custom or practice allowing its police department to engage in a pattern of unlawful arrests. (Am. Compl. ¶ 57.) A municipality cannot be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See*

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)).[4]

Ihlenfeld has failed to state a claim against the Borough of Darby because he pleads no facts to support these bare allegations. In any event, a municipality cannot be held liable under *Monell* if there is not an underlying constitutional violation. *See Johnson v. City of Philadelphia*, 837 F.3d 343, 354 n.8 (3d Cir. 2016). Having failed to allege that Officer Barr lied or omitted material information in his arrest warrant application, Ihlenfeld has failed to state a claim for the underlying constitutional violation and his claims against the Borough of Darby also fail.[5]

**2.**

Ihlenfeld also claims the medical treatment he received while in custody and the conditions of the jail violated his constitutional rights. Pretrial detainees have a right to medical care guaranteed by the Fourteenth Amendment that is "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). When the pretrial detainee alleges deficient medical treatment, the Third Circuit has applied the deliberate indifference standard used in similar challenges under the Eighth Amendment. *See Natale*, 318 F.3d at 582; *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636–37 (3d Cir. 1995); *see*

---

[4] Ihlenfeld also alleges there was a failure to properly train officers. Where "the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). Moreover, "the identified deficiency in a . . . training program must be closely related to the ultimate injury," in other words, it "must have actually caused the constitutional violation." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)) (quotations omitted). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Ihlenfeld's reference to prior lawsuits brought against the Borough is insufficient to support his failure to train claim.

[5] Ihlenfeld's claims against Chief Smythe and the four John Doe Defendants are similarly deficient. Individuals must have personal involvement in a violation of another's civil rights to be held liable under § 1983. *See Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

*also Estelle v. Gamble*, 429 U.S. 97 (1976). Under this analysis, Ihlenfeld must show that Defendants were deliberately indifferent to his medical needs and that those needs were serious. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Ihlenfeld has failed to state claim under this theory because he has not alleged that *any* named defendant was responsible for his care at the jail. *See, e.g.*, (Am. Compl. ¶¶ 38–39, 56). In his amended complaint, Ihlenfeld describes what happened "during his incarceration" but does not allege *who* was responsible for his care or even *where* he was held. (*Id.* ¶¶ 38, 56.) He references "officers at the jail" who allegedly refused to administer his medication, but he never identifies them.[6] (*Id.* ¶ 39.) Since an individual can only be held liable for violating another's civil rights if he has personal involvement in the violation, the failure to allege any facts against Officer Barr, Chief Smythe or the four John Doe Defendants is fatal to this claim.[7] *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Ihlenfeld alleges that his unlawful incarceration was the "direct result of the longstanding custom, policy, usage, and practice of Defendant Borough of Darby and Defendant Smythe" which has allowed the police department to engage in a repeated pattern of unlawful arrests. (Am. Compl. ¶ 57.) His failure to state a claim for an underlying constitutional violation is fatal to his *Monell* claim. *See Johnson*, 837 F.3d at 354 n.8.

---

[6] While Ihlenfeld has named four John Doe Darby County officers, his complaint suggests that these Defendants were the arresting officers and *not* the officers responsible for his care at the jail. *Compare* (*id.* at ¶ 34) *with* (*id.* at ¶ 39).

[7] Finally, in addition to his failure to allege any facts against Defendants, Ihlenfeld's claim regarding the jail's "deplorable conditions" is not entitled to a presumption of truth because he did not include "sufficient factual matter to render [his claim] plausible on [its] face." *Schuchardt*, 839 F.3d at 347. While a plaintiff need not plead detailed facts, he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### 3.

Officer Barr is also entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has made clear that the "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* at 231–32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (internal quotations omitted)). It has thus "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

"When evaluating a claim of qualified immunity, courts engage in a two-pronged inquiry. The first prong probes whether the allegations, "taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right." *Muth v. Woodring*, ___ F. App'x ___, No. 15-4101, 2016 WL 6694546, at *2 (3d Cir. Nov. 15, 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 2014 (2001) (internal quotation omitted)). "The second prong asks whether the law was clearly established at the time of the violation." *Id.* (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotations omitted)). The defendant has the burden of establishing qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Courts assessing qualified immunity are free to examine these two prongs in either order. *Kelly*, 622 F.3d at 253–54.

Ihlenfeld alleges that Officer Barr violated his constitutional rights under the Fourth Amendment because he failed to corroborate the statements of a victim or conduct any further

investigation before applying for an arrest warrant. As explained above, nothing Officer Barr is alleged to have done violated Ihlenfeld's clearly established federal rights. *See supra* Subsection III.A.1.

**B.**

Ihlenfeld also brings state law claims for false arrest and imprisonment, malicious prosecution, assault and battery. The Court declines to exercise supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

**IV.**

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

Ihlenfeld may amend his § 1983 claim with respect to his Fourteenth Amendment theory of liability. *See supra* Subsection III.A.2. Ihlenfeld's § 1983 claims under the Fourth Amendment are dismissed with prejudice because amendment would be futile. *See supra* Subsections III.A.1 and III.A.3.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.